IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JODY SIMMONS, | |
| Plaintiff, | |
| v. | Case No. 3:24-CV-01724-NJR |
| CLOUD NINE HOSPITALITY GROUP, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jody Simmons brings this employment discrimination action under Section 1981 of the Civil Rights Act of 1964 ("Civil Rights Act"), 42 U.S.C. § 1981, and Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.*, alleging race-based discrimination by Defendant Cloud Nine Hospitality Group ("Cloud Nine"). (Doc. 1). Cloud Nine has not appeared to defend the case.

Having obtained an entry of default from the Clerk of Court, Simmons moved for default judgment under Rule 55(b)(2) and for entry of an award against Cloud Nine. (Doc. 9). On September 29, 2025, the undersigned denied Simmons's motion for default judgment without prejudice. (Doc. 12). The Court explained that it was "unable to establish an award for [Simmons] with reasonable certainty," and thus could not enter a default judgment in his favor. (*Id.*). On October 29, 2025, Simmons filed an amended motion for default judgment against Cloud Nine. (Doc. 13). The amended motion is now ripe for disposition.

## BACKGROUND

Simmons worked for Cloud Nine as a "house/maintenance man" from March 1, 2022 until July 31, 2023. (Doc. 1 at ¶ 12, Complaint). Simmons is Black and thus a member of a protected class. (*Id.* ¶ 13). In July 2023, Cloud Nine's general manager (identified as "Rick") told employees in a department meeting that the hotel where Simmons worked was changing management groups and that "all" housekeeping staff would be replaced prior to the change in management. (*Id.* ¶ 14). Within a week of Rick's announcement, eight Black housekeepers were terminated from their positions and replaced with Hispanic housekeepers. (*Id.* ¶ 15). This included Simmons, who was told to "turn in [his] badge" on July 31, 2023. (*Id.* ¶ 17). The "housekeeping managers," who are not Black were not fired or replaced. (*Id.* ¶ 15).

During his employment, Simmons "met or exceeded" Cloud Nine's expectations of him. (*Id.* ¶ 21). He thus alleges that he was terminated due to his race. (*Id.* ¶¶ 22-23). And as a result of Cloud Nine's alleged conduct, Simmons suffered a "loss of income, loss of other employment benefits and . . . mental anguish, distress, humiliation and loss of enjoyment of life." (*Id.* ¶¶ 30, 38). After he was terminated, moreover, Simmons lost his car and apartment and became homeless. (Doc. 14-1 ¶ 13 (Simmons Affidavit in Support of Am. Mot. for Default Judgment)). During this time, he stayed at various homeless shelters and with friends as he was able. (*Id.* ¶ 14).

While he was unemployed, Simmons also tried to find new employment but was unsuccessful for almost two years. (*Id.* ¶ 12). Indeed, Simmons applied to five or six jobs per day in hopes of improving his financial and professional circumstances. (*Id.* ¶ 19).

His unemployment lasted until May 15, 2025, when he began a new job, earning $16 per hour. (*Id.* ¶ 20). Given his allegedly unlawful termination on July 31, 2023, this meant that Simmons was unemployed for approximately 93 weeks.

## LEGAL STANDARD

Rule 55(a) requires the clerk to enter default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise. FED. R. CIV. P. 55(a). The clerk's entry of a default "is merely a formal matter and does not constitute entry of a judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (3d ed. 2010). "Once default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)).

Under Rule 55(b)(2), "the court may enter a default judgment if the amount at issue is for a sum certain." *Am. Nat'l Bank & Trust Co. of Chi. v. Alps Elec. Co.*, No. 99 C 6990, 2002 WL 484845, at *1 (N.D. Ill. Mar. 29, 2002) (citing FED. R. CIV. P. 55(b)(2)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Instead, the plaintiff must introduce evidence on the issue of damages, and the district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.*

DISCUSSION

Simmons seeks to recover backpay, compensatory damages, pre- and post-judgment interest, and attorney's fees and costs. (Mem. in Support of Am. Mot. for Default Judgment (Doc. 14)). The Court will examine Simmons's entitlement to each of these claimed damages categories.

1. Backpay

"An award of back pay to a successful Title VII plaintiff is 'presumptively appropriate.'" *Ward v. Tipton Cnty. Sheriff Dep't*, 937 F. Supp. 791, 798 (S.D. Ind. 1996). (quoting *E.E.O.C. v. O & G Spring and Wire Forms Spec. Co.*, 38 F.3d 872, 880 (7th Cir. 1994)). "The claimant must establish the amount of damages, but she is presumptively entitled to full relief." *Garcia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1256 (N.D. Ill. 2015). Here, Simmons requests $48,360.00 in backpay, reflecting his lost wages. This number is based on his claimed weekly income of $520.00, multiplied by 93 weeks (the length of time between his termination and the date on which he began a new job). (Doc. 14-1).

Although the Court agrees that Simmons is entitled to backpay, it disagrees with his calculation of it. Simmons submitted a pay stub in support of his amended motion for default judgment, covering a period from May 17, 2023, to May 30, 2023. (Doc. 14-4). During this two-week period, Simmons worked 58.89 hours, earning $13 per hour. (*Id.*). Based on these figures, Simmons earned a total of $765.57 over two weeks or $382.79 per week. Multiplying this figure by 93 weeks results in **$35,599.47** in lost earnings. The Court considers this figure to represent a more appropriate lost wage amount.

2. Compensatory Damages

In an employment discrimination case, "[t]he availability of compensatory damages apart from back and front pay demonstrates Congressional recognition that discriminatory employment practices inflict injuries beyond mere loss of a paycheck or reduction in wages and benefits, and Congressional intent that victims of employment discrimination should be compensated for those non-pecuniary injuries." *Williams v. Pharmacia Opthalmics, Inc.*, 926 F. Supp. 791, 794 (N.D. Ind. 1996). "When assessing the propriety of a compensatory damages award, relevant inquiries may include whether the award is monstrously excessive, whether there is no rational connection between the award and the evidence, and whether the award is roughly comparable to awards made in similar cases." *Lampley v. Onyx Accept. Corp.*, 340 F.3d 478, 483-84 (7th Cir. 2004) (internal quotation marks omitted).

Simmons seeks a compensatory damages award of $5,000.00 to compensate him for the psychological and emotional injuries he sustained from his termination. Considering Simmons's allegation of targeted race-based termination by Cloud Nine, this request appears to be within the range of reasonable alternatives. Application of the *Lampley* factors confirms as much. An award of $5,000.00 is not "monstrously excessive" in light of what happened to Simmons. He is a Black man who, along with other Black employees, was allegedly terminated because of his race. His termination and concomitant loss of income also led to him becoming homeless, an experience he describes as "distressing and degrading." Under these circumstances, $5,000.00 dollars is not "monstrously excessive." There is also a "rational connection" between Simmons's

claimed compensatory damages and Cloud Nine's misconduct. Simmons alleges that Cloud Nine specifically "targeted" him for termination because of his race. Then, after he was terminated, Simmons experienced humiliation, emotional distress, a lack of self-worth, and a loss of enjoyment of life. These types of psychological injuries are common in wrongful termination cases, and they support the necessary "rational connection" to a compensatory damages award. *See id.* at 484 (evidence of "negative effects on [plaintiff's] emotional state" supported rational connection to compensatory damages award). Finally, Simmons's claimed compensatory damages award is "roughly comparable to awards made in similar cases"—indeed it is rather modest. *See e.g.*, *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 390-91 (7th Cir. 2011) (reducing compensatory damages award from $200,000 to $30,000 in race-based discrimination and termination case because plaintiff lacked "stronger evidence of long-lasting emotional harm;" collecting cases); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833-34 (7th Cir. 2013) ($100,000 compensatory damages award not excessive for failure to accommodate plaintiff's severe back pain; collecting comparable cases).

Accordingly, the Court awards Simmons **$5,000.00** in compensatory damages.

3. Pre- and Post-Judgment Interest

Simmons also seeks an award of pre- and post-judgment interest. "In general, whether and how to award prejudgment interest . . . lies in the discretion of the district court, although there is a presumption in favor of granting such interest." *Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) (internal citation omitted). Here, the Court is not persuaded that pre-judgment interest is appropriate. Cloud Nine has not defended this

case. While this is certainly not Simmons's fault, it forces the Court to evaluate his claimed damages without the benefit of adversarial testing. And based on the evidence Simmons has presented, pre-judgment interest does not appear warranted. Aside from his own affidavit, Simmons has submitted only a paystub to support his damages. The Court, in its discretion, thus declines to award pre-judgment interest. *See Musser v. Colonnade Senior Dev., LLC*, No. 3:24-CV-02045, 2025 WL 2390544, at *2 (S.D. Ill. Aug. 18, 2025) (entering default judgment in employment discrimination case but denying pre-judgment interest); *Quidgeon v. Olsen*, No. 10–cv–1168, 2011 WL 1480537, at *3 (C.D. Ill. Apr. 19, 2011) (same in trademark infringement action); *N.W. Trans, Inc. v. Horn's Poultry, Inc.*, No. 92–2270, 1993 WL 787510, at *3 (C.D. Ill. 1993) (same on summary judgment based on "equitable considerations").

Post-judgment interest, on the other hand, is appropriate here. "[R]egardless of whether there is any reference to postjudgment interest in the pleadings, a court's order, or the entry of a money judgment, a prevailing plaintiff in federal court is automatically entitled to postjudgment interest." *Miller v. Artistic Cleaners*, 153 F.3d 781, 785. (7th Cir. 1998). Post-judgment interest will accrue from the date of judgment in this case as laid out in 28 U.S.C. § 1961.

    4. <u>Attorney's Fees and Costs</u>

Finally, Simmons seeks $7,572.00 in attorney's fees and $510.00 in costs. In a Title VII action, courts may, in their discretion, award reasonable attorney's fees to the "prevailing party." 42 U.S.C. § 2000e-5(k). "To determine a reasonable fee, the district court uses the lodestar method, multiplying the number of hours reasonably expended

on the litigation by a reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011).

Simmons's attorneys submitted a table outlining the time they spent working on this case. (Doc. 14-2, p. 3). The case demanded 11.5 hours of attorney time and roughly the same amount from several paralegals and other professional staff. Considering the involvement of these professionals and the total amount of time spent, the Court finds counsel's request for $7,572.00 in fees reasonable under the lodestar method. Simmons's request for $510.00 in costs to cover case filing and service fees is also reasonable. Accordingly, the Court will award Simmons a total of **$8,082.00** in attorney's fees and costs.

## Conclusion

For these reasons, the Amended Motion for Default Judgment filed by Plaintiff Jody Simmons (Doc. 13) is **GRANTED in part** and **DENIED in part**. Simmons's requests for compensatory damages, attorney's fees and costs, and post-judgment interest are **GRANTED**. Simmons's request for back pay is **GRANTED as modified** in this Order. His request for pre-judgment interest is **DENIED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Simmons and against Defendant Cloud Nine Senior Hospitality Group for a total award of **$48,681.47**.

**IT IS SO ORDERED.**

DATED: January 27, 2026

                                                          **NANCY J. ROSENSTENGEL**
                                                          United States District Judge